IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSEPH MIDDLETON | Criminal Action No.<br><br>1:22-CR-017-JPB |

## United States' Sentencing Memorandum

The United States of America, by Ryan K. Buchanan, United States Attorney, and Rebeca M. Ojeda, Assistant United States Attorney for the Northern District of Georgia, files this sentencing memorandum in advance of Defendant Joseph Middleton's sentencing, which is set for April 29, 2025. Defendant pleaded guilty to a violation of Title 21, United States Code, Sections 841(a), 841(b)(1)(C) and 846. As set forth below, the United States submits that a total custodial sentence of 151 months is sufficient, but no greater than necessary, to comply with the purposes set forth in Title 18, United Stated Code, Section 3553(a).[1]

### I.   Procedural Background

On January 3, 2023, Mr. Middleton was charged in a First Superseding Indictment for conspiracy to possess with the intent to distribute a controlled substance (Count One) and one substantive count for possession with the intent to distribute a controlled substance (Count Seven). (Doc. 16). On December 18, 2024,

---

[1] The final Presentence Investigation Report (PSR) has not yet been completed and, as a result, the following sentencing memorandum is based on the initial PSR and defense objections to the PSR. The Government reserves the right to supplement this sentencing memorandum once the final PSR is completed and reviewed by the undersigned.

Mr. Middleton plead guilty to those charges, which carry no mandatory minimum sentence and a 20-year maximum sentence. (Doc. 279). In the written plea agreement, the Government agreed to recommend that Middleton receive the equivalent of a four-level downward variance at sentencing. (Doc. 279-1).

## II. The Guidelines Calculations Are Correct and Are Not Impacted by the 2018 Sentencing Guidelines Manual

The United States Probation Office drafted the initial Presentence Investigation Report. Mr. Middleton filed objections to the report claiming, among other issues, that the 2018 Sentencing Guidelines should be applied to his case, rather than the 2023 Sentencing Guidelines. Mr. Middleton did not file any objections to the facts about the underlying offense conduct included in the report; but he did object to the determination that he is a career offender. Specifically, he argues that if the 2018 Sentencing Guidelines applied then he would avoid the career offender designation. However, the 2018 Sentencing Guidelines do not apply in this case and, even if they did, Mr. Middleton would still qualify as a career offender. Therefore, the Guidelines calculations included in the PSR are accurate.

### A. Guidelines Calculations by the Probation Office

The Presentence Investigative Report ("PSR") calculated the sentencing guidelines for Counts One and Seven. The base offense level was calculated as 36, pursuant to USSG § 2D1.1(c)(2), since the defendant was responsible for at least 2.76 kilograms of methamphetamine. (PSR ¶ 94). No enhancements were applied. Thus, Mr. Middleton's adjusted offense level totaled 36. (PSR ¶ 99). He

was given a total three-level reduction for acceptance of responsibility. (PSR ¶¶ 100-101).

As noted above, the Probation Office also determined Mr. Middleton was a career offender, pursuant to USSG § 4B1.1. (PSR ¶¶ 102, 121). However, this determination did not alter Mr. Middleton's total offense level, which was calculated as Level 33.

Mr. Middleton's criminal history was calculated as a Category V. (PSR at ¶¶ 118-120). Then, upon application of the career offender enhancement, the applicable criminal history category increased to a Category VI. (PSR at ¶ 121). The custody guideline range, based on a Total Offense Level of 33 and a Criminal History Category of VI, is listed as 235 months to 293 months. (PSR at 44).

The Government raised no objections to the initial Presentence Investigation Report. Middleton raised objections that, if granted, would further reduce the applicable Guidelines range.

### B. Career Offender Calculation by the U.S. Probation Office

Mr. Middleton has a long criminal history involving drug trafficking, drug possession, and one violent offense. (PSR at ¶¶ 107-117). He was determined to be a career offender under Chapter Four of the Sentencing Guidelines. (PSR ¶ 102). Pursuant to U.S.S.G. §4B1.1(a), a defendant is a career offender if (1) he was at least 18 years old at the time of the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

In this case, Mr. Middleton was 36 years old at the time he committed the instant offense. (PSR at ¶ 102(1)). He also plead guilty, among other crimes, to possession with intent to distribute a controlled substance (methamphetamine), which is a controlled substance offense and used by the probation office to trigger the Chapter Four Career Offender Enhancement. (PSR at ¶ 102(2)). He was previously convicted of a controlled substance offense and a crime of violence (aggravated assault) prior to the offense conduct in the instant case. (PSR ¶ 102). Specifically, he was arrested when he was 26 years old and later convicted on October 14, 2014 in the Superior Court of Paulding County, Georgia for one count of felony possession of controlled substance with intent to distribute (marijuana), among other offenses. (PSR at ¶ 110). He received a sentence of 45 days confinement and several years of probation, which was revoked on various occasions. (*Id.*). On December 1, 2017, Mr. Middleton was convicted of two counts of aggravated assault (family violence) in the Superior Court of Fulton County due to causing bodily harm to his partner. (PSR at ¶ at 116). He was sentenced to three years of confinement and 17 years of probation for this offense. (*Id.*).

As a result of these two prior crimes, according to the PSR, Mr. Middleton is designated as a "career offender," causing his criminal history category to rise from V to VI, pursuant to Section 4B1.1(a) and (b). (PSR at ¶¶ 120-121). His total offense level is not impacted by the designation.[2] (PSR at ¶¶ 102-103).

---

[2] When a defendant qualifies as a career offender under Section 4B1.1(a), the defendant's offense level may also be impacted. Specifically, Section 4B1.1(b) contains a table listing seven "Offense Statutory Maximums" and a corresponding "Offense

### C. The 2023 Sentencing Guidelines Are Correctly Applied in this Case

Mr. Middleton objects to the use of the 2023 Sentencing Guidelines, arguing that application of the 2018 Sentencing Guidelines is appropriate in his case since his offense conduct occurred at a time when the 2018 Sentencing Guidelines were in effect. He goes on to argue that substantive amendments to the 2023 Sentencing Guidelines cause Mr. Middleton to qualify as a career offender when he otherwise would not. However, Mr. Middleton is mistaken about the impact of the Guideline amendments to his case.

#### i. Amendment 822 Changed the Sentencing Guidelines to Allow an Inchoate Offense to be "Controlled Substance Offense" Triggering the Career Offender Enhancement

At the time Mr. Middleton committed the instant offense, the 2018 U.S. Sentencing Guidelines were in use and included a provision, U.S.S.G. § 4B1.1, which defined when a defendant qualifies as a career offender. To be designated as a career offender, "the instant offense of conviction" needed to be "a felony that is either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a) (2018). In the 2018 Guidelines, there was also a provision defining what constituted a "controlled substance offense":

---

Level." The subsection specifically states, "if the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply." U.S.S.G. § 4B1.1(b).

　　Here, Mr. Middleton's adjusted offense level *before* considering his status as a career offender is a level 33. His offense level as a career offender, according to the table in Section 4B1.1(b)(3), is a level 32 since the statutory maximum for his offense of conviction is twenty years. The offense level for a career offender from the table is lower than the offense level otherwise applicable, thus the higher offense level applies.

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b) (2018). The commentary in the 2018 Sentencing Guidelines for this provision stated that the definitions of "crime of violence" and "controlled substance offense" include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses. U.S.S.G. § 4B1.2, cmt. 1 (2018).

In *United States v. Dupree*, published in January 2023, the Eleventh Circuit held that inchoate offenses, including conspiracy to possess with the intent to distribute a controlled substance, does not trigger the application of the career offender guidelines because the term "controlled substance offense" in U.S.S.G. § 4B1.2(b) "unambiguously excludes inchoate offenses." 57 F.4th 1269, 1279-80 (11th Cir. Jan. 18, 2023) (en banc) (overruling *United States v. Smith*, 54 F.3d 690 (11th Cir. 1995)). The Court in *Dupree* decided there was no need to review any guidance in the commentary because the term "controlled substance offense," which was included in the very text of the Guideline, was not ambiguous. 57 F.4th at 1279.

Later, in November 2023, certain amendments to the U.S. Sentencing Guidelines became effective. *See* Adopted Amendments (effective Nov. 1, 2023), U.S. Sentencing Guidelines. Specifically, U.S.S.G. § 4B1.2 which defines the terms used in the career offender guideline was amended, in part, by the insertion of a new sub-paragraph stating:

> (d) *Inchoate Offenses Included.* – The terms "crime of violence" and "controlled substance offense" include the offenses of aiding and abetting, attempting to commit, or **conspiring** to commit any such offense.

Amendment 822, U.S. Sentencing Guidelines (emphasis added), https://www.ussc.gov/guidelines/amendment/822. The U.S. Sentencing Commission stated its reasons for inclusion of the inchoate offenses portion of Amendment 822:

> The amendment makes several changes to address a circuit conflict regarding the authoritative weight afforded to certain commentary to §4B1.2. The commentary to §4B1.2 prior to the amendment provided that the definitions of "crime of violence" and "controlled substance offense" include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses. Although most circuits had previously held that this commentary was authoritative under *Stinson v. United States*, 508 U.S. 36 (1993), several courts have now concluded that the guideline definition of "controlled substance offense" does not include inchoate offenses because such offenses are not expressly included in the guideline text. *See United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023) (*en banc*).… More recently, courts have relied on *Kisor v. Wilkie*, 139 S. Ct. 2400 (2022), to hold that guideline commentary should not be afforded deference unless the guideline text is genuinely ambiguous. *See, e.g.*, *Dupree*, 57 F.4th at 1275. Applying the *Kisor* holding to the guidelines, courts have concluded that the plain language definition of "controlled substance offense" in §4B1.2 unambiguously excludes inchoate offenses.…
>
> The amendment addresses this circuit conflict by moving, without change, the commentary including certain inchoate and accessory offenses in the definitions of "crime of violence" and "controlled substance offense" to the text of the guideline.

Amendment 822; Reason for Amendment, U.S. Sentencing Guidelines, https://www.ussc.gov/guidelines/amendment/822.

> ii. **Since Mr. Middleton's Instant Offenses Include Possession with Intent to Distribute Controlled Substances, and Not Exclusively an Inchoate Offense, the 2023 Sentencing Guidelines Should Be Applied.**

In his objections, Mr. Middleton argues that, in light of amendment to the Guidelines (presumable Amendment 822), the application of the 2023 Sentencing Guidelines would cause him to be designated as a career offender although he would not be subject to such an enhancement under the 2018 Sentencing Guidelines—since one of the offenses he plead guilty to in this case is an inchoate offense of conspiracy. However, Mr. Middleton also plead guilty to the substantive offense of possession with intent to distribute controlled substances. (*See* Doc. 279). And, indeed, his conspiracy conviction was *not* used a predicate for the career offender enhancement – only the conviction for possession with intent to distribute methamphetamine is a predicate for the enhancement. (PSR at ¶ 102(2)).

Defendant also objects to the use of his federal conviction for possession with intent to distribute controlled substance being used as the predicate offense for the career offender enhancement. However, under the 2018 *and* the 2023 Sentencing Guidelines, the offense of possession with intent to distribute controlled substances still falls within the definition of "controlled substance offense." See *Mitchell v. United States*, No. 8:19-CR-529-TPB-TGW, 2025 WL 754726, at *3 (M.D. Fla. Mar. 10, 2025) (holding, even in light of *Dupree*, that defendant's offense of conviction for distributing fentanyl and heroin under 21 U.S.C. § 841 constitutes "a felony controlled substance offense" under USSG

4B1.1); *see also United States v. Williams*, 718 F. App'x 890, 897 (11th Cir. 2017) (concluding that a career offender enhancement was properly applied when the offenses of conviction included violations of §§ 841 and 846 and the defendant had at least two prior felony controlled substance convictions).

Only one version of the Guidelines should be used in calculating a defendant's offense level, a principle known as the "one-book rule." *United States v. Newton*, 766 F. App'x 742, 754 (11th Cir. 2019) (unpublished). "As a general matter, a convicted defendant's sentence is based on use of the Guidelines Manual in effect on the date the defendant is sentenced. *Id.* (citing *United States v. Bailey*, 123 F.3d 1381, 1403 (11th Cir. 1997)) (internal citation omitted). However, there is an exception "if use of the Guidelines Manual in effect at the time of sentencing would result in a harsher sentence (translated: higher Guidelines' offense level/range) than would have arisen from use of an earlier manual in effect at the time of the commission of the crime for which the defendant is being sentenced." *Newton*, 766 F. App'x at 754-55. "[I]mposition of a harsher sentence arising out of sentencing provision enacted after the commission of a defendant's crime would violate the Ex Post Facto Clause, and when that prospect arises, the district court must use the Guidelines Manual that was in effect on the date the crime was committed." *Id.* at 755 (citing *Bailey,* 123 F.3d at 1403).

The sentencing court must use "either the Sentencing Guidelines Manual in effect at sentencing or the one in effect when the crime was committed," which is known as the "one book rule." *Id.* (citing *Bailey,* 123 F.3d at 1403 and U.S.S.G. § 1B1.11(b)(2)). Under the one book rule, a court must use only one edition of the

United States Sentencing Guidelines and must apply that edition in its entirety. U.S.S.G. § 1B1.11(b)(2) (2023). "[A] defendant cannot 'mix and match amended provisions' to achieve a more favorable sentence," *Bailey*, 123 F.3d at 1404 (quoting *United States v. Lance*, 23 F.3d 343, 344 (11th Cir. 1994), unless a subsequent amendment to the Guidelines is clarifying rather than substantive. U.S.S.G. § 1B1.11(b)(2). When a subsequent amendment is clarifying, a court can consider it along with the earlier edition of the Guidelines. U.S.S.G. § 1B1.11(b)(2).

Here, Mr. Middleton would face the same sentence under the current career offender sentencing provisions, which were adopted after the commission of his crime, as he would face under the 2018 Guidelines. Thus, application of the 2023 Sentencing Guidelines would not violate the Ex Post Facto Clause. The district court must use the 2023 Guidelines Manual, which is currently in effect at the time of Mr. Middleton's sentencing. *See Newton*, 766 F. App'x at 754.

### D. Mr. Middleton's Prior State Convictions Are Predicate Offenses Under the Career Offender Guideline

In his objections, Mr. Middleton challenges the use of his prior state convictions, a 2013 Georgia conviction for felony possession of controlled substance with intent to distribute (marijuana) and a 2017 Georgia conviction for two counts of aggravated assault, as predicates for the career offender enhancement. However, Mr. Middleton's objection must be overruled.

As noted earlier, a defendant qualifies as a career offender when, among other requirements, he "has at least two prior felony convictions of either a crime of

violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). A "controlled substance offense" includes "an offense under federal or **state** law [that] . . . prohibits . . . the **possession of a controlled substance** (or a counterfeit substance) **with intent to** manufacture, import, export, **distribute**, or dispense." U.S.S.G. § 4B1.2(b) (emphasis added). The term "crime of violence" includes "any offense under federal or **state** law, punishable by imprisonment for a term exceeding one year, that . . . is murder, voluntary manslaughter, kidnapping, [or] **aggravated assault**, . . . ." U.S.S.G. § 4B1.2(a) (emphasis added).

State—not federal—law "defines which drugs qualify as a 'controlled substance' if the prior conviction was under state law." *United States v. Dubois*, 94 F.4th 1284, 1296 (11th Cir. 2024). And, the Eleventh Circuit has adopted "a time-of-state-conviction rule: the term 'controlled substance[ ]' . . . means a substance regulated by state law when the defendant was convicted of the state drug offense, even if it is no longer regulated when the defendant is sentenced for the federal firearm offense." *Dubois*, 94 F.4th at 1298. Here, Mr. Middleton was convicted of the crime of possession with intent to distribute marijuana in 2014 in Paulding County Superior Court at a time when Georgia state law penalized the possession with intent to distribute such a substance, a Schedule I controlled substance, as a felony subject to imprisonment exceeding one year. *See* O.C.G.A. §§ 16-13-30(b), (d) (2014). Although Mr. Middleton was initially sentenced to only 45 days of confinement for that offense and over 9 years of probation, PSR at ¶ 110, the felony itself was punishable with up to 10 years imprisonment. O.C.G.A. §§ 16-13-30(b), (d) (2014). Thus, his 2014 state conviction qualifies as a

"controlled substance offense" under the career offender guidelines. *See* U.S.S.G. § 4B1.1.

Similarly, Mr. Middleton's challenge to his aggravated assault conviction, a violation of O.C.G.A. § 16-5-21, as a valid predicate offense for the career offender enhancement also fails. The plain language of Section 4B1.2(a)(2) specifically lists "aggravated assault" as one of the enumerated "crimes of violence." *See also United States v. Dawkins,* No. 17-CR-80095, 2024 WL 5221200, at *8 (S.D. Fla. Dec. 26, 2024) (holding that defendant's prior Florida conviction for aggravated assault with a deadly weapon qualifies as a "crime of violence" under U.S.S.G. § 4B1.2). Indeed, the Eleventh Circuit has previously determined that aggravated assault under Georgia law qualifies as a "crime of violence" for career offender purposes because it is equivalent to the enumerated offense of "aggravated assault" in the Guidelines. *United States v. Morales-Alonso*, 878 F.3d 1311, 1320 (11th Cir. 2018). Thus, Mr. Middleton's objection should be overruled.

## III.    A Departure Is Appropriate Due to Mr. Middleton's Overrepresented Criminal History

In determining a reasonable sentence, the Court should begin by correctly calculating the applicable Guidelines range. *Gall v. United States*, 552 U.S. 38, 49 (2007); *United States v. Pugh*, 515 F. 3d 1179, 1189 (11th Cir. 2008). Sentencing courts then may consider any information concerning the background, character, and conduct of a defendant when deciding what sentence to impose, *see* 18 U.S.C. § 3661, whether that sentence be within or outside of the guideline range.

Sentences imposed outside of the guideline range rely on departures or variances.

Departures, which are incorporated into the Sentencing Guidelines, allow for "flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices." U.S.S.G. § 5K2.0, comment. (backg'd.); 28 U.S.C. § 991(b)(1)(B). Variances, on the other hand, are not imposed within the Guidelines framework. USSG §1B1.1, comment. (backg'd.) ("If . . . the court imposes a sentence that is outside the guidelines framework, such a sentence is considered a 'variance.' "). Because departures are part of the guidelines framework, while variances are not, sentencing courts typically calculate any departures prior to considering whether to vary. USSG §1B1.1(a)–(c) (courts shall first determine the guideline range, then consider the departure policy statements, then consider the 18 U.S.C. § 3553(a) factors as a whole).

### A. Mr. Middleton Should Receive a Downward Departure of One Criminal History Category

Sentencing Guidelines Section 4A1.3 provides that a downward departure may be warranted "[i]f reliable information indicates that the defendant's criminal history category substantially overrepresents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(b)(1). The commentary provides examples of circumstances that may warrant a downward departure based on a defendant's criminal history, including when "[t]he defendant received criminal history

points from a sentence for possession of marihuana for personal use, without an intent to sell or distribute it to another person." U.S.S.G. § 4A1.3, appl'n note 3(A)(ii). For career offenders within the meaning of Section 4B1.1, courts may depart downward under Section 4A1.3 by one criminal history category at most. U.S.S.G. § 4A1.3(b)(3)(A). The party seeking this adjustment to the Guidelines bears the burden of establishing entitlement to it. *United States v. Stuart*, 384 F.3d 1243, 1246 (11th Cir. 2004). If the court allows for a downward departure, the court must specify in writing the reasons for departure under Section 4A1.3. Specifically, for a downward departure, the court must specify the reasons why the applicable criminal history category substantially overrepresents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes. U.S.S.G. § 4A1.3(c)(2).

Here, Mr. Middleton received six criminal history points related to simple possession convictions. (PSR at ¶¶ 111-114, 117). Specifically, between 2014 and 2018, he was convicted four times for possession of controlled substances, including misdemeanor possession of less than one ounce of marijuana. (PSR at ¶¶ 111-114). He also received one point for felony possession of methamphetamine in 2023. (*Id.*). These convictions do not appear to be the result of negotiated pleas to lesser included offenses, but rather pleas to the actual, charged offenses. (*See id.*) These possession crimes, combined with Mr. Middleton's prior conviction for drug trafficking and aggravated assault, as well as his probationary status, totaled ten criminal history points and a criminal history category of V. (PSR at PSR at ¶¶ 118-120). Given his status as a career

offender, Mr. Middleton's criminal history category was raised to VI. (PSR at ¶ 121).

Given the unique circumstances of this case, the Government believes a departure under § 4A1.3(b)(1) is warranted. Although Mr. Middleton's admittedly lengthy criminal history has led to his assignment of a high criminal history category, that category does *slightly* overrepresent the seriousness of his crimes. Mr. Middleton's 2015 conviction for possession of marijuana, in a personal use amount, and without the intent for distribution, is the type of circumstance that can warrant a downward departure under the guidelines, U.S.S.G. § 4A1.3, appl'n note 3(A)(ii) — and should do so here. The Government asks the Court to depart from a criminal history category VI to a category V, which would be sufficient and not greater than necessary to reflect the seriousness of Mr. Middleton's past criminal conduct. This is the maximum departure related to criminal history that is allowed under the Guidelines when the defendant is a career offender. *See* U.S.S.G. § 4A1.3(b)(3)(A).

Should the Court grant this requested departure, the custodial guidelines range would be 210 months to 262 months when taking into consideration offense level 33 and criminal history category of V.

## IV. A Variance Is Appropriate Under the Factors Listed in 18 U.S.C. § 3553

After calculating the Guidelines and taking into consideration any departures, the Court should assess the factors set forth in 18 U.S.C. § 3553(a) to determine a reasonable sentence. *Gall*, 552 U.S. at 49-50; *Pugh*, 515 F.3d at 1189-90. The § 3353(a) factors include the nature and circumstances of the offense, the need for

the sentence imposed to reflect the seriousness of the offense, and deterrence of criminal conduct.

Typically, the Government recommends a sentence within the properly calculated Guidelines range because the Guidelines often yield a sentence that accurately reflects a defendant's culpability relative to similarly situated individuals. The Guidelines do so by incorporating such critical elements as a defendant's criminal history, the severity of the instant offense (for example, as measured by dollar loss, drug quantity, or number of victims), and mitigating or aggravating factors such as role in the offense, abuse of position of trust, and the vulnerability of victims.

Generally, the Government finds that the Guidelines yield sentences that are reasonably related to a defendant's criminal conduct: more culpable defendants face higher sentences than less culpable defendants. However, on those occasions when the Government determines that the Guidelines do not capture the history and characteristics of a defendant or the sentences of co-defendants, the Government may seek a variance. This is such a case. As shown below, the Government believes a sentence of 140 months imprisonment, a downward variance from the Guidelines, is reasonable under the § 3553(a) factors.

### A. A Variance Resulting in a 140-Month Sentence is Sufficient and Reasonable

Considering the sentencing factors under Title 18, United States Code, Section 3553(a), and consistent with the terms of the plea agreement, the Government recommends a custodial sentence of 140 months with a term of supervised release to follow.

Specifically, the Government agreed to recommend the equivalent of a four-level downward variance at the sentencing hearing as to drug trafficking counts in the plea agreement. Should the Court grant the requested downward departure of one criminal history category, *supra*, a four-level downward variance would result in a custodial Guidelines range of 140 to 175 months. The Government also agreed in the plea agreement to recommend the low-end of the adjusted guideline range. Thus, the Government recommends a custodial sentence of 140 months for the drug trafficking counts.

### i. Nature and Seriousness of the Offense

Mr. Middleton facilitated the commission of a drug trafficking offense involving 2.76 kilograms of methamphetamine actual. Surveillance and undercover drug purchases demonstrated that Mr. Middleton, as a facilitator of the drug deals, was part of a larger conspiracy to distribute narcotics in the Northern District of Georgia. Drug trafficking presents a serious danger to the community given the inherent perils posed by the drug trade and the devastation that drug use brings upon families. Mr. Middleton's actions show a disregard for the safety of our community, especially given that he was distributing the same type of drug that he himself has been addicted to and has caused so much suffering in his own life.

### ii. History and Characteristics

However, as stated in the plea agreement, the Government does believe a variance is appropriate given Mr. Middleton's history and characteristics. Mr. Middleton has a history of drug abuse, as evidenced by his criminal and his

personal history, which has fueled the majority of his prior encounters with law enforcement. However, since his 2022 arrest for possession of methamphetamine, Mr. Middleton has rehabilitated himself in many ways. He has been compliant while on pretrial supervision for the past two years and has remained drug-free during that time. (PSR at ¶ 21). He continues to participate in drug rehabilitation programs and assists other addicts on their road to recovery. (PSR at ¶ 155).

Of note, Mr. Middleton does not appear to have ever received a custodial sentence of more than 12 months for any of his prior convictions. Mr. Middleton is now, for the first time, facing a significant custodial sentence for his drug offenses, which will serve as a deterrent from future crime.

Moreover, Mr. Middleton did accept responsibility for his actions immediately after his arrest and before the indictment in this case. His plea has saved the Government resources in preparing for a trial against him.

A sentence of 140 months in custody for narcotics trafficking is a significant and reasonable sentence for Mr. Middleton. Such a sentence would reflect the seriousness of this offense and deter him from committing future crimes, as well as deter other individuals who may otherwise be tempted to engage in drug trafficking.

### iii. Avoid Sentencing Disparities

A sentence of 140-months in custody will also avoid sentencing disparities among the defendants convicted in this case.

Co-defendant Miguel Urieta-Maldonado, who was more culpable than Mr. Middleton, was responsible for an entire methamphetamine laboratory where the

dangerous drugs were being manufactured in the same house where a toddler and pregnant woman resided. Not only did he face a significantly higher drug weight, but he also unlawfully possessed a firearm which he used to threaten others living in his home to keep his illegal activities clandestine. He received a five-level variance and a sentence of 215 months and 25 days. (PSR at 3).

Co-defendant Agustin Salgado, who had no criminal history, assisted Urieta in specific narcotics transactions, but he did not have the same aggravating factors as Urieta or any firearms charges. Salgado, after a four-level variance, received a sentence of 57 months in custody. (PSR at 3).

Co-defendant Esteban Rodriguez-Negrete, who had no criminal history, supplied drug customers such as Mr. Middleton with kilogram quantities of methamphetamine he maintained in his room. He fled from authorities at the time his residence was searched and provided a false name to authorities upon arrest. After a variance, he received a sentence of 135 months for his drug trafficking crimes and an additional 15 months in custody for one count of possession of child pornography. (PSR at 3).

Co-defendant Pedro Aleman-Ponce, who had a prior conviction for the violent offense of rape, assisted Rodriguez-Negrete with one drug transaction and stayed in the room where they stored multiple kilograms of methamphetamine. He was sentenced to 180 months in custody. (PSR at 2).

Co-defendant Michael Proctor was also a career offender with 18 criminal history points. Proctor was attributed to slightly more drug weight than Mr. Middleton, approximately 4 kilograms of methamphetamine, and had a more

significant criminal history. Proctor, a customer of kilogram quantities of drugs, fled from police in his vehicle while directing methamphetamine to be tossed on the side of a busy roadside. Proctor also threw a loaded pistol into the front yard of a home in Cobb County, Georgia during the vehicle chase with law enforcement. After a significant variance, Proctor received a total sentence of 206 months in custody. (PSR at 2).

Mr. Middleton is differently situated than his co-defendants. Although he has a significant criminal history, mostly involving controlled substance offenses, he has the lowest attributable drug weight of any of his co-defendants and has none of the aggravating factors of Urieta and Proctor. Given that many of the co-defendants received variances and to avoid sentencing disparities, Mr. Middleton should also benefit from a variance.

## Conclusion

For the foregoing reasons, this Court should impose a sentence of 140 months' imprisonment and 3 years of supervised release.

        Respectfully submitted,

        RICHARD S. MOULTRIE, JR.
          *United States Attorney*

        *Rebeca M. Ojeda*
        REBECA M. OJEDA
          *Assistant United States Attorney*
        Georgia Bar No. 713997
        Rebeca.ojeda@usdoj.gov